Thank you, Your Honors. Good morning. My name is Ben Gubernick, appearing for Plaintiff Appellants. Karen Collier, I'll reserve five minutes for rebuttal. I'll watch the... I don't know if that podium is one that raises or not, but either way, I'll just tell you I'm having trouble hearing you, so if you could keep your voice up. Okay, I'll do my best, Judge, and please let me know if I'm falling short of that. Okay, so what I'd like to start with here is the briefing talks a lot about McGinnity and Whiteside and this whole issue of ambiguity, but this actually is a lot simpler than that because the misrepresentations at issue in this case are not ambiguous at all. Chocolate banana means chocolate and banana. That's how any reasonable person would read that. And the elephant in the room here is how much work the post-positive adjective flavor does, right? It's like saying, oh, this person said president, but they meant president-elect. Not really because there's a picture on the package, and so the representation to a person would be that whatever is pictured on the package would be in there. So that's the argument. Right, so we're starting with this. But then you have someone who's kind of what we call a niche consumer, and so a person who buys these products and is familiar with the jargon and how it's labeled would presumably know that there's not going to be a whole piece of fruit in there. So could you help me through that dichotomy? Yes, Judge, and actually I think this is something that tripped the district court up as well. We've never alleged that there are supposed to be whole slices of banana or fresh banana or even dried banana in the cereal. What are you alleging should be there? It should be there as an ingredient. You can have it as a puree. You can have it as juice. You can mix it into the batter or where the squares come from. Somewhere there should be some presence of banana. Is that what you're saying? Exactly. There's got to be some banana in some amount of some kind. No one expects to pick up the... But this is all about the Manuka honey case. It takes us back to the Manuka honey case. So I think Judge Rawlinson and I seem to have the same question. So this is a keto brand, whatever, specialty cereal, and I think what the district court was reasoning was anybody who's really interested in buying who would be expected to know, hey, if it says zero sugar, that can't be consistent with bananas being in there or chocolate being in there. I am summarizing not very well. The district court was much more eloquent. What's wrong with that reasoning? The problem with that is, well, I mean, a few things. First off, I would disagree if we're talking about a niche specialty product. This stuff's sold everywhere. Well, but not to everyone. That's the point. But it is a threshold question, and I've thought about that because I'm trying to remember how many jars of honey are on the shelf in the supermarket. There's aisles of snacks and cereal. So in that way, I agree there's a whole lot more of it. But what else should we consider to decide if we're in niche product land? Well, I think we look at the rest of the stuff on the bag. What are the contextual clues there? We have the words keto-friendly. I don't know what that means. And really, that could mean just about anything if you think about it. But do you think someone who's serious about the keto diet would know what that means? Well, and that goes to really the essence of what the district court got wrong here, is we can pile assumption on top of assumption about what the millions of people who buy this cereal know about the process of making cereal and know about keto diets. The same thing was true in the Manuka honey case. At some point, I mean, our precedent says if you are advertising to a group of people who are extremely knowledgeable about this product, then the analysis changes. And so that's kind of my concern. Was the advertisement to a group of people who are extremely knowledgeable about this product? Sure, and I think that's really where Whiteside is useful. Because Whiteside talks about this idea that this niche specialty product concept should be used extremely sparingly. It shouldn't be applied to mass market, everyday items like this. I mean, look, there are millions of people buying this. It's alleged in the complaint that at the time of filing, they'd sold something like 10 or 11 million bags of it. I have a twist on this. It's right up the same alley as Judge Rollinson. If a consumer were really knowledgeable because they're really counting every gram of whatever, then what do we do about people who are trying to follow a very strict keto diet, recognizing that zero grams of something under these rules doesn't really mean zero? Zero calories doesn't have to mean zero calories. The FDA has a safe harbor provision that allows a non-zero number to be reported out as zero, and that's compliant. So I don't know where we would draw the line about just how savvy are our savvy shoppers. Correct. Actually, I would like to talk about that issue because it seems to me the only contextual clue on the bag that really indicates this might not have banana in it is that it says zero grams of sugar. As Your Honor pointed out, you're allowed to have less than 0.5 grams of sugar in it and still call it zero grams sugar. And people encounter this all the time. When you buy a food that says zero grams trans fat, people know just by its plain wording. That doesn't mean there is absolutely zero. It just means it's some number under one gram, right? So the point is someone, a reasonable consumer, would see chocolate banana. They'd see it next to these other keto-friendly cereals. This is a crowded space with lots of competing products. This isn't one Manuka honey among 50. And they would say, okay, this is the only one that doesn't have the word flavored on the front. They would think that they are buying something fundamentally different than what's in these other products, just as a matter of language. Wait a minute. Hold on. Hold on. Sorry. It's the absence of the word flavor. What's going to tip them off? Do that again. It's the absence of the word flavored, and this is what I meant by president versus president-elect. These do not mean the same thing. When you add the word flavored to the end of it. I'm not sure the president analogy was working. Try another one. Try another one. The point is, I guess the point I'm making is these mean fundamentally different things. If you say the word banana, it's an actual fruit. If you say the word banana flavored, you're describing what this thing tastes like. Okay, so your point is that this package says banana and chocolate and doesn't say banana flavor. Is that your point? Exactly. I understand. Okay, thank you. And to the extent it has banana flavor in it, that would be buried in the artificial flavor or natural flavor on the back of the ingredient that does not anywhere disclose banana. Right, exactly. So you would have to look at the ingredient list and say, nope, we've been tricked. On the front it says chocolate banana, then you look at the back in the ingredient list and buried in there is that it's actually just banana flavor, no banana. If there was any banana in this product, there would not be an issue. If the word flavored was on the front of this package, as the FDCA and Sherman Law and Application require, there would not be an issue. Would that, I guess, something that's not clear to me at least, is if the natural flavors contain banana derivatives, is that in dispute? Or does everyone, are you pleading that, no, there's just no banana in it? So you're right. So I guess there are two answers on that. One, the complaint doesn't allege how this particular batch of natural flavors that they used was created. And the truth is, like, who knows? And Catalina Crunch probably doesn't even know what's in there. Because some flavor is an essence of actual banana, right? That's how they get there. In some circumstances, that's the definition. I looked this up. That's the definition, right? Correct. Somewhere down the line, there was something that resembled a subcomponent of banana that got a bunch of emulsifiers and solvents added and distilled. So it might be that there was some. But not necessarily. Is it theoretically possible that by natural flavors, they actually mean that there's actual banana in there? I mean, it would contradict what they have on the ingredient label. But sure, if it turns out that there's actually banana in the chocolate banana cereal, then it's not a misleading statement. I don't think you're answering the question. But maybe it's because I didn't ask it very well. I think that, to follow up on Judge Johnstone's point, when something says, let's say, chocolate flavor or coffee flavored, that a manufacturer can do that if the flavoring can sometimes contain sort of essence of actual coffee bean, right? But it wouldn't necessarily have to. Is that right? That's correct. If you get that taste or that flavor from something else as your base that you're adding all this stuff to, then you're an artificial flavor. Which makes the phrase natural flavor entirely counterintuitive, by the way. Right. I think actually the complaint cites a few news articles that make this point. This is why they're undesirable to consumers. I mean, it's not even really clear what you're getting with these. But it's not banana in any form, as people understand. Circling back to Judge Johnstone's question, can we tell from banana, if it said banana flavor, we wouldn't necessarily know if there's any banana in there. I think it would be enough to say that we would know it is not banana in the way any consumer understands banana. Okay. So this package doesn't say flavor. It just says banana. It just says banana. And that's the problem here. If it said banana flavor, it wouldn't be a false statement. It would be a true statement. What are the limiting principles? So here's the donut hypothetical. It's not a hypothetical. It's on the label. What's on the label? Do we have to test it? Apple cider donuts. Do we have to test it for apple? Does it have to have fermented apple juice? Or does it have to be converted into donuts and then rolled out into Krispy Squares? I guess a couple things. One, I would say that donut's not an ingredient. But for the apple, which is really the more important thing, I mean, there are actually cases in the circuit that have dealt with donuts that have been like blueberry donuts that don't have blueberry in them. They just have something that simulates their presence. So to comply there, you need something, some sort of apple something. It can be puree. It can be apple cider. It can be pieces of apple. It's got to have something that's recognizably apple. And I'm just asking that because I think your theory, we'd have to come up with a rule here to help distinguish the donut case or even the apple cider case from the apple case. And how are you drawing that line? Let's now just take the more plausible apple cider line. Right. Well, actually, I mean, I don't think the court needs to make a new rule here. I think the FDCA, the rule they have in place that's incorporated by the Sherman Law, works extremely well for this. And it is entirely predictable. It's what we've been using in grocery stores for 50 years. And it's what all of Catalina Crunch's competitors follow. And there's no problem. They've just decided we're going to experiment with not using this simple rule. We're just going to leave the word flavored off, fundamentally change the meaning of that noun. What would be the compliant labeling, in your view, of the apple cider donut cereal? It could be apple cider donut flavored, apple cider apple cider flavored. You just have to have something on there. Let's forget the cereal. If someone's selling apple cider donuts that don't have the word flavored at the end, I mean, I think under this circuit's precedent, that would actually be misleading. Yeah, I think you could use, like, apple cider flavored donut would be the formulation for that. So they just have to have the word flavored in there. Or it could even be an asterisk, like this court pointed to in Whiteside. They have to have some contextual clues on here to alert people that what they're buying here does not contain this product. So I've gone a bit over the time. All right, thank you. Please, the court. My name is Matthew Orr, representing Catalina Snacks. Your Honors, you've touched on, I think, the correct analysis. And this case is Trader Joe's Moore case. This is not necessarily a Whitesides or a McGinnity case. And I think what we really have to look at is we talk about the reasonable consumer standard, but I think we have to really take a close look at what that really means. And what that reasonable consumer standard is is the requirement that it's probable that a significant portion of the general consuming public or of targeted consumers acting reasonably in the circumstances could be misled. So what that requires is two things. Number one, to identify the targeted consumer. And number two, to identify the circumstances in which the claim is made. And here, the targeted consumers are consumers who are looking for a ketogenic breakfast cereal. On that, ketogenic, that actually refers to, originally, a therapy, a high-fat, low-sugar therapy, as I understood it, for epilepsy. As it's understood now on the average shelves, I mean, this is not, and I don't think a reasonable consumer could see this and expect that it would have those ketogenic effects. Keto has become a health fad.  And this cereal is quite a ways removed from having any therapeutic effects where that word keto comes from. So what are we supposed to do? You know, manuka honey, right, it's a place, it's a thing. It's a thing that still exists. When a manufacturer uses that as kind of a fad rather than a statement of particular therapeutic benefits, how are we supposed to say that the reasonable consumer should include all of that in their consideration of the labels? Yeah, I think it goes to the targeted group. And the targeted group are people who are consumers of breakfast cereal who are interested in low-carbohydrate or low-sugar foods. Well, maybe they're interested in kind of healthy eating. I mean, you know, they'll show up in health food aisles, healthy eating. Maybe they're interested in bananas. Well, I mean, generally I think the ketogenic consumer would be looking for products that have low glycemic index type foods. But I think we don't necessarily need to go there, Your Honor, with this. What we have here is a product and a consuming market that is looking for zero-sugar or low-sugar foods. And that's what the product is. So, you know, whether the target audience is consumers who are interested in low-carbohydrate and low-sugar foods, the product, the circumstances in which this product is placed on the market, you've got to look at the product as a whole. And here we have a product that is marketed as keto-friendly, zero-sugar, and we have a product that has a picture of the cereal on the front, which is a cereal that is uniform in appearance. It's uniform consistency. Do you think that does the claim have to depend on there being real bananas, like chunks of banana in there? Have we ever said that? No, that's not necessarily. But that's what the plaintiff argued at the lower court level. This has to be in the ingredient somewhere. Correct. I think that's right. And it's not here. Well, I don't – sorry. Can you say your question? I guess the standard – you're not suggesting that the only way – that the reasonable consumer would assume that there are actual chunks of banana in there? No, no. I think that what the reasonable consumer standard here is the reasonable consumer would expect that this is a flavor, that this is not – that these products would not have – Right. And so how do you get there? Because it's advertised as no sugar? Correct. Zero sugar, Your Honor. And here we have – sorry? What about the mint? Well, it's mint chocolate, Your Honor, is what the ingredient is – or what the flavor is. And so I think – Is it hyphenated? I can't recall. It's not hyphenated, but it's a mint chocolate product. Why? How is that distinguishable from chocolate banana and banana being separate? Sorry? You're saying mint chocolate. As I understand it, it contains chocolate, but it doesn't contain mint. Well, it contains cocoa, I think, Your Honor, and that satisfies the ingredient requirement. But I think when you're talking about these products as a whole, and plaintiff has identified apple cider donut, has also identified honey graham, and the question is would a reasonable consumer understand a product that has honey and has apple cider and donuts, would a consumer expect those ingredients to be in this product? And I think on – Can we back up? Because I think your decision tree you started right at the top to say this is a Trader Joe's case, a Manuka honey case, and I'm not so sure it is, but I'd like to know why you think it is. You've been mentioning the targeted consumer, not just the reasonable consumer, but a targeted one, so that puts us into niche land, Trader Joe's. But this is a product that would be – there's an entire maybe one or two aisles of cereals in grocery stores, for example. And I think the allegation that makes this a niche product is that it is – I think there's two. One is that it's a bit more expensive, apparently, than the average cereal, and the other is that it says keto-friendly. Are there other factors that I'm missing that you think puts you in this category? Sure, Your Honor. I think the zero sugar is the primary one as well. Okay. So if that's it, then what about – that was the district court's reasoning. She said if the targeted consumer who knows about keto would recognize someone who's really looking at these labels, and some people do and some people don't, but the people who do would recognize that you can't have zero sugar, was the court's reasoning, and banana. Correct. Or chocolate. So what about the fact that someone who's really looking at labels knows that there's actually a safe harbor and products can be labeled properly, labeled no sugar, when they have some sugar? I think it goes to what the reasonable consumer or that targeted consumer would understand. I don't think there's any allegation that a consumer looking for cereal, even if they have adopting a ketogenic lifestyle, would have an in-depth understanding of that. I think when they see zero sugar, they assume that there's no sugar in the product. I'm just not sure that you can have it both ways. That's what I'm struggling with. So either there's people like me who are clueless about labels and looking at keto, and, I mean, really I'm pretty careless about it, and there's other folks who are very careful about their diet. And for those people, if that's what we're talking about to put you in Trader Joe's land, the niche market, it seems to me, I don't know how you can have it both ways, that they would know some of the inside scoop and not. Yeah, and let me back up. I think this Trader Joe's has applicability here in terms of potentially a niche market, but I don't think it's required. I don't think a niche market is required to affirm the lower court's holdings. I appreciate that, but before you go there, I just want to get your best shot at whether we should be in the niche market target, niche market category of case law, which is Trader Joe's. And your best argument is that it says keto, that it's priced higher, and that it says zero sugar. Or did I miss anything? Correct. I think that's right, Your Honor. Okay. And then what's your best response to this concern that I have about if somebody really understands the inside scoop, they know that zero doesn't necessarily mean zero within the appropriate application of the FDA labeling rules. I think they would understand that a cereal product that's labeled apple cider donut, for example, or chocolate banana would probably be above the variance there in terms of a half a gram per serving. Well, I guess your ingredients, several of these cereals contain monk fruit extract. Monk fruit does contain carbohydrates. It contains a non-disclosable amount of calories, but that's a fruit. So if it was just there, it had trace amounts of banana, why wouldn't a reasonable keto consumer think that, well, maybe just a touch of sweetness, a touch of flavor brought from it, but not enough to take it out of keto land? Well, because I think when you look at the packaging as a whole and the product as a whole, in terms of the product lines as well, apple cider donut, I think they would recognize that that most likely is going to raise it above the... Well, now I'm talking about two fruits, the banana and the monk fruit. The monk fruit has much less carbs, but it does have some. It would be entirely consistent with zero grams to have a little bit of fruit at the end of that ingredient label, would it not? I'm not sure if it would be entirely consistent. It would be possible, theoretically, or chemically possible, I suppose. Well, you've done it with the fruit in your client's cereal, right? There is monk fruit in it. Correct. And here, again, it does have natural flavor, and there's no allegation that that natural flavor does not include or is derived from some of these ingredient components. And so what we have here is a situation where plaintiff has not made any allegation that the natural flavors are not derived from certain of these ingredients. The plaintiff has simply alleged that it was misled because he believed that there was those ingredients. As a pleading matter, I had this question also for your friend, but so as a pleading matter, why can they not come back and say, well, that's an affirmative defense for you to establish, well, that natural flavor actually contains banana, but you're not disclosing banana in the natural flavor? I think it's a basic pleading element that you have to overcome a reasonable consumer standard. And if they've not alleged that there's no banana or any of those ingredients in the product, but I think also, again, I think while a targeted consumer is certainly relevant but not necessary, in the same way, I think that we do get into white side here, which is the back of the label. And I think we get there because the same issues and the same circumstances and fact pattern that leads a reasonable consumer to understand that these characterizing flavor statements or flavors and not ingredients creates an ambiguity, creates an ambiguity in the label. Because, okay, you think a reasonable consumer knows that she needs to look at the back label to get more information because what? Correct. What is it on the front label that tells her that? The zero gram. Well, I think there's a fundamental incompatibility. Between zero sugar and banana? Correct. Okay. Correct. And I think there's the issue that in white side said, well, if there's an ambiguity and requires additional information or causes the consumer to say, hey, how is this being done, then they're tasked with going to the back of the label. And this is consistent with the FDA guidelines. We submitted the FDA guidelines, which is a guideline to consumers to identify and tell consumers where to look for flavoring versus ingredients. And it's not surprising that the FDA said, well, you look for ingredients in the ingredient panel, and that's where you look for ingredients. And if you have a statement on the front of a label such as maple or maple flavored or artificial maple, you're not necessarily going to get maple in that product, but you need to look at the back of the label. And that's where you'll see natural flavorings and see the lack of a certain ingredient or component of the product. And that's consistent with the regulations as well. If you look at 101.21, we talked about that in the motion, in our briefing, which is kind of a decision tree, as you might consider. And that's basically if the product is one that's basically as long as the characterizing flavor is not supplied by an artificial flavor or reinforced by an artificial flavor, you don't need to use the word flavored. So Appellant mentioned and said that we've violated these FDA regulations, but the FDA regulations don't require the word flavored when you're using a characterizing ingredient unless it's a type of food in which you'd commonly expect that ingredient to be present. So the FDA regulation, as we cited in our papers, used the strawberry shortcake as an example. In that type of a product, a consumer would understand strawberry shortcake is commonly understood to include strawberries. I don't think that that's the case with dried ketogenic cereals or cereals in general. I didn't think the strawberry shortcake example helped you because this isn't a... What was it, a McGinty nature fusion or something? It was a meaningless phrase, right? As opposed to here, it seemed much closer to what Whiteside was talking about, which is an unambiguous statement, unadorned chocolate banana. Well, if you look at what Whiteside's actually said... Right here. Yep. So what you look at is if a reasonable consumer would necessarily require more information before they could reasonably conclude that the front label was making a specific representation. So I think what you have to look at is the entire label of the front. And so you can't isolate, for example, apple cider donut or banana chocolate. What you look at is the entire front label and see if there's an unambiguous representation being made that a pellon is contending. And if you look at the label as a whole, the front label as a whole, with the zero-gram sugar, is incompatible with a statement that the product includes donuts and apple cider, and it would necessarily require a consumer to look further, and they could look further to the back of the label. And that's what the FDA regulations and the guidance documents say. It comes awfully close to conflicting with McGinty, I think, came awfully close, to conflicting with Gerber, with Williams versus Gerber, right, because of the images on the front label. And what you're telling me is you're not taking away that the images or the statements, you have both images and statements, chocolate and banana, that those are Williams-like, but what you're saying is the consumer, reasonable consumer, needs to be reading the fine print on the front label and is charged with that knowledge. I think you're saying charged with that knowledge, you know, full stop. I don't think it's a fine print. I mean, the front label here prominently says keto-friendly, prominently says zero-gram sugar. I didn't mean for that to be loaded. I am trying to figure out what your argument is because otherwise it comes awfully close to undermining Williams. Yeah, Williams is consistent, I think, with McGinty in a way. I think it's essentially saying you can't have something on the front label. Well, Judge Gould didn't, which is why he authored Whitesides. It created confusion to talk about the front label being ambiguous without telling us what ambiguous meant, right? That was a problem. Ambiguous means that the consumer would— Because lawyers can always come up with ambiguity, right? But would the consumer necessarily require additional information? And so here, when you have a statement that says apple cider donut and you've got a zero-gram sugar prominently displayed on the front of the label, is that something that would require the consumer to go further and say, hey, how are they doing this? Is this a situation where they're, you know, how are they actually coming up with this and is there really these ingredients in the product? And so I think it wouldn't necessarily require them to go to the back label. I think that the lower court got that right. And that's really the gist of the allegations here and the complaint. I think that the lower court absolutely got it right. I'm looking at the front label, right? Yeah. Catalina Crunch—which one do you want to talk about, the mint chocolate or the— I guess we've got all of them here. And we're talking about—it says Catalina Crunch, keto-friendly, mint chocolate cereal, and then there's a stack on the right side, zero-gram sugar, very prominently, right? Zero-gram sugar, zero-gram—I can't read it, but anyway. Protein, I think. And what do the tiny words say on the left underneath the bowl and at the bottom? That says serving suggestion, Your Honor. So that, again, I think is a contextual clue. And, again, I'm not saying that we're relying upon that in any meaningful sense, but it's to signal to the consumer that that vignette does not represent what the cereal actually looks like. So it does include—and I will say, with respect to the Honey Graham vignette, it includes raspberries and coconut, ingredients that clearly have nothing to do with the characterizing flavor. So this— Could you go back to the first one, mint chocolate? There's another fine print, and my law clerk will be upset with me for asking this because she's told me all this. But there's the language that's on a slope just under the bowl, and you've told me that's the part that says serving suggestion, which I would be able to see on my iPad because I could look over here. But I don't know what the words are that are right under mint chocolate cereal. What do those say? I'd have to— At the very bottom? My recollection is it has something to do with not a low-calorie food, and it does refer, I think, the consumer to the nutrition facts panel. So there is an asterisk in that representation that does direct the consumer to the back label. On Catalina Crunch chocolate banana, I don't see the same words underneath Catalina Crunch. The label otherwise looks the same, and I don't know if that's— I believe they're the same. If it's just too tiny in this particular block, let me see if I can find it over here. I think it's in the lower left of the label. Yeah, I think they're all there. They're all similar. Now I'm looking at apple cider just a minute. Are you looking at the mint chocolate, honey graham? I'm trying to find the banana. Here's the banana one. Is that where you want me to look on the lower left? There's—  All right. And you think that says not a low-calorie cereal? I believe so, that it accompanies a zero-gram sugar claim and also refers the consumer to the back panel, which in some respects— Does it refer to the consumer to the back panel? I believe that the asterisk or there's a dagger that does refer to the nutrition facts panel, I think. For fat content.  Your Honors, I've run out of time. And lunch approaches. May have another question. Thank you, Judge Rawlinson. I can see the four-fat content on the mint chocolate label, so thank you for your patience. Thank you, Your Honors. Thank you. Bottle. Bottle. Okay, so just a few things on this. The only real contextual clue that the defendant can point to here is this zero-grams sugar thing. And I guess I just want to point out here, one, as Your Honor mentioned, that's not necessarily compatible to hang some amount of banana in there. But also more importantly, I have no idea if the vast majority of reasonable consumers who buy this stuff know you can't have banana in a zero-gram sugar product. I have no idea if that's true. And neither does the district court or anybody else in this room. And that's the problem with this on a 12b6 motion. We can draw a whole bunch of inferences and just speculate that into reality. But that's not – that's what a trial is for. That's what the case is designed to unpack and figure out the truth of. It's not up to – we can't just speculate here and just be like, oh, everyone knows what that means. I guess I'm not everyone. The other thing on this is just for this – the guidelines on the FDA website or that web post thing. It's careful reading on that. It is – or close reading. It does not say you can omit the word flavor. It says you can use the word maple. It does not say don't worry, the word flavor doesn't have to be there, which makes sense. Because their regulations say you need the word flavor in this situation. It's that simple. It's bright line. Another thing on this, I guess I would just point out just how much stuff there is on these bags. That reinforces the core misrepresentation here. You have chocolate banana and then all over you've got pictures of bananas. You've got a yellow bag. All of this stuff – and even the cereal is chocolate. The defense says, well, this cereal is uniform. It all looks the same. No, it doesn't. The different flavors of the cereal, the color changes depending on what variety you're buying. The implication for the consumer is you're buying something that actually contains these products. And chocolate banana, that is a chocolate-colored cereal. How is someone supposed to know it has chocolate but not banana? You'd look at that and figure, well, it appears to have chocolate in it. It probably is banana too. If it said chocolate and chocolate with banana flavoring or something, that's different, but that's not what we're dealing with here. So I would just ask the court reverse and remand. Thank you. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court.
judges: RAWLINSON, CHRISTEN, JOHNSTONE